IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| STEVEN C. MESSNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cv. No.   1:11-cv-0059 |
| | ) | District Judge Campbell |
| HICKMAN COUNTY, *et al.*, | ) | Magistrate Judge Brown |
| | ) | |
| Defendants. | ) | |

**To the Honorable District Judge Todd J. Campbell**

### REPORT AND RECOMMENDATION

Presently pending before the Magistrate Judge is Defendant's Motion for Summary Judgment. (Docket Entry ("DE") 73)  As explained in detail below, the Magistrate Judge recommends that the defendant's Motion for Summary Judgment be **GRANTED** and the plaintiff's claims be **DISMISSED** with prejudice.

### I.     INTRODUCTION AND BACKGROUND

Plaintiff, Steven Messner, was diagnosed with multiple sclerosis ("M/S") at some time during 2000 or 2001, (Deposition of Steven Messner ("Messner"), DE 73-1, p. 19 ¶¶ 2-7.), and has drawn Social Security disability benefits since that time.  (Messner, DE 73-1, p. 145-146.) Plaintiff's M/S causes sporadic dizziness, rendering him unstable and prone to falling.  (Messner, DE 73-1, p. 60 ¶¶ 9-11.)  Although Plaintiff had never been prescribed a cane prior to breaking his hip[1] in August of 2010, at the time of his arrest in 2010, Plaintiff relied upon a walking stick secured from the woods on his 40 acre tract of land when he experienced dizzy spells.  (Messner,

---

[1]     Plaintiff technically broke his right femur in a fall while he was incarcerated in the Hickman County jail. The break occurred at the femoral neck, which is adjacent to the ball of the hip joint. (Messner, DE 73-1, p. 119 ¶¶ 16-20.)  *See* Dorland's Illustrated Medical Dictionary 688 (3d ed. 2012).

DE 73-1, p. 60 ¶¶ 9-11.)  Prior to breaking his hip, Plaintiff did not use the walking stick "extensively . . . [but] only once in a while."  (Messner, DE 73-1, p. 152 ¶¶ 22-24.)  "[M]ost of the time [he] would walk without it" even when traversing his 40 acre tract of land.  ("Messner, DE 73-1, p. 239 ¶¶ 9-25; p. 240 ¶¶ 1-5.)

On the morning of August 2, 2010, Plaintiff was arrested for violation of a protective order and was transported to the Hickman County jail where he remained until September 13, 2010.  (Defendants' Statement of Undisputed Facts ("Facts"), DE 75, p 3 ¶ 12; p. 16 ¶ 89.)  Although Plaintiff did not rely on his cane to approach and enter the car sent to secure him, Plaintiff requested that he be allowed to bring his walking stick with him to jail.  (Facts, DE 75, p. 2 ¶ 14; p. 5 ¶ 22.)  Plaintiff's request was refused because a cane is a potential weapon.  (Facts, DE 75, p. 22 ¶ 23.)

At the time Plaintiff was booked into the jail facility, Plaintiff explained to the booking officer that he had M/S and suffered from dizzy spells and seizures.  (Facts, DE 75, pp. ¶¶ 26-27.)  However, Plaintiff signed the medical questionnaire which stated that he was able to walk without aid.  (Messner, DE 73-1, p. 67 ¶¶ 1-6, p. 70 ¶¶ 18-22.)  Plaintiff made multiple requests, both at booking and subsequent thereto, for his walking stick, but each request was refused because the walking stick could be used as a weapon.  (Messner, DE 73-1, p. 161 ¶¶ 7-12.)  Rather, Plaintiff was placed in the general population in a smaller cell with only two other inmates.  (Facts, DE 75, p. 6-7 ¶¶ 30, 32-34.)   Plaintiff was given a cot that was closer to the floor, and the cell was equipped with its own toilet facilities and an intercom to permit communication with jail officials should Plaintiff need help.  (Facts, DE 75, p. 7 ¶ 34; Messner, DE 73-1, pp. 77-78, 163.)

Initially, Plaintiff occupied his time by visiting the library, reading, watching television, and relaxing at a picnic table located in the recreation yard. (Facts, DE 75, p. 7 ¶ 36; Messner, DE 73-1, p. 78 ¶¶ 23-25.) The other inmates had fashioned a ball from old rags that they used to play games, and, although he lacked the agility to play catch (Messner, DE 73-1, p. 78 ¶¶ 16-20), Plaintiff "could limp along with them [and] [t]hat was good enough for [him]." (Messner, DE 73-1, p. 166.) Between August 2nd and August 10th, Plaintiff never reported any dizzy spells to the officials at the jail and never requested, either in writing or verbally, medical attention. (Facts, DE 75, p. 7 ¶ 35.)

On the morning of August 10th, however, Plaintiff awoke and was feeling dizzy. (Facts, DE 75, p. 8 ¶ 39.) Rather than disturb his two cellmates who were trying to sleep, Plaintiff elected to use the general toilet facilities in the cell bay rather than those in his cell. (Messner, DE 73-1, p. 168 ¶¶ 2-8.) Plaintiff did not avail himself of the intercom to ask for aid, but attempted to walk from his cell to the community toilets on his own. (Facts, DE 75, p. 8 ¶ 39; Messner, DE 73-1, p. 168-69.) Approximately half way between his cell and the community toilet facilities, Plaintiff lost his balance and fell; striking his right hip on the concrete slab. (Facts, DE 75, p. 8 ¶ 38.) Plaintiff made his way over to the intercom in the cell bay to call for help, and the jail's nurse arrived in the cell bay a short time later.[2] (Facts, DE 75, p. 9 ¶ 44.)

According to the medical report, Plaintiff experienced "[r]ight hip and buttock pain [and] the nurse observed "a reddened area on [Plaintiff's] right buttock." (Deposition of Tonie Cloud ("Cloud"), DE 73-5, p. 16 ¶ 14-16.) There was no bruising to Plaintiff's hip. (Messner, DE 73-

---

[2] According to the deposition of the jail's nurse, Tonie Cloud, defendant Hickman operates a medical clinic inside of the jail facility staffed by contract medical employees of the Hickman Community Medical Center. The clinic is staffed by a nurse five days a week for approximately 32 hours per week. A nurse practitioner visits the facility each week and is available for consultation with the nurse working on site. Further, a physician is also available to speak with the nurse on site to address any immediate needs and order drugs or tests. (Cloud, DE 62-1, pp. 1-24.)

1, p. 99 ¶ 21.) Plaintiff complained of "mild pain [in] his right and left hip . . . [without] guarding." (Cloud, DE 73-5, p. 16-17.) Plaintiff was given an ice pack and ibuprofen for pain and returned to his cell. (Cloud, DE 73-5, p. 17 ¶¶ 1-6.) Jail officials continued to check on him throughout the day and night. (Messner, DE 73-1, pp. 177 ¶¶ 11-15.) Over the next few days the jail nurse also checked on plaintiff during her rounds of the other inmates, and Plaintiff continued to attend roll call although it was an arduous task. (Messner, DE 73-1, p. 186 ¶¶ 2-8.) During this time, Plaintiff never requested medical attention via the intercom, grievance form, or by face to face communication with guards who occasionally checked on the prisoners. (Messner, DE 73-1, p. 102.) By August 16th, however, Plaintiff was unable to get out of his cell to attend roll call, and the jail's nurse was again consulted. (Messner, DE 73-1, p. 194.)

Plaintiff was first examined in the cell bay, but was eventually transported to the jail's medical clinic with the assistance of a walker. (Messner, DE 73-1, p. 186 ¶¶ 20-21.) The nurse noted that there was no bruising to Plaintiff's right hip and Plaintiff reported no pain upon palpation. (Messner, DE 73-1, pp. 106-107.) Despite these findings, the nurse consulted with a physician who prescribed injections of Solu-Medrol and Toradol for the pain and inflammation. (Messner, DE 73-1, p. 108 ¶¶ 16-18.) At the conclusion of the examination, the nurse told defendant Wasden that there was nothing wrong with Plaintiff's right leg and that he could be returned to his cell.[3] (Messner, DE 73-1, p. 191 ¶¶ 7-9; p. 193 ¶¶ 11-12.)

On August 19, 2010, although Plaintiff did not request medical attention, Plaintiff was examined by a nurse practitioner in his cell because he was unable to report for roll call. (Messner, DE 73-1, p. 194.) The nurse practitioner ordered an x-ray of Plaintiff's right leg and

---

[3] The record reflects that Plaintiff was placed in medical isolation sometime between August 16th and August 19th. The record does not establish when Plaintiff was placed in medical isolation or whether the nurse practitioner's examination occurred in the general population or in medical isolation. (Messner, DE 73-1, pp. 75, 101, 117, 191-92, 206, 270-71.)

hip.  (Messner, DE 73-1, p. 111 ¶ 2.)  The x-ray, taken at Hickman County Community Hospital, revealed a break in the femoral neck in Plaintiff's right leg, and Plaintiff underwent surgery to pin the break at Maury County Hospital on August 20, 2010.  (Messner, DE 73-1, pp. 115, 117.)

Plaintiff filed suit on July 18, 2011   (Docket Entry ("DE") 1) seeking compensatory damages[4] for violations of Title II of the Americans with Disabilities Act (the "ADA") and for violations of his Eighth Amendment rights against cruel and inhuman punishment. Specifically, Plaintiff claims that Defendants—Hickman County, Sheriff Ward and the Jail's Administrator, Jerry Wasden—violated the substantive provisions of the ADA when they refused to allow him to retain his cane/walking stick while incarcerated or failed to reasonably accommodate his multiple sclerosis.[5]  Further, under 42 U.S.C. § 1983, Plaintiff claims that he was subjected to cruelty while incarcerated in the Hickman County jail because: 1) his requests for the return of his cane/walking stick, or a reasonable accommodation thereto, were refused, and 2) he was denied medical care for a broken femur.

Defendants moved for summary judgment on July 10, 2013 (DE 73) and Plaintiff responded on August 27, 2013.  (DE 79)  Defendants filed reply on August 4, 2013.  (DE 81)  Plaintiff moved for permission to file sur-reply on September 6, 2013 (DE 82), and, having been granted, filed sur-reply on August 9, 2013.  (DE 85).

This matter is properly before the court.

## II.  ANALYSIS

### A.  Standard of Review

---

[4]  Plaintiff also seeks injunctive relief for violations of his constitutional rights that occurred while he was incarcerated at the Hickman County jail.  However, he has subsequently been released.  Thus, he may no longer pursue injunctive relief.  *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)

[5]  At the outset, the Magistrate Judge notes that Plaintiff asserts in his response to summary judgment that Defendants lack a formal policy governing the treatment of individuals with disabilities in the jail facility, and appears to assert claims on behalf of all disabled persons for Defendants' "systemic" violation of the ADA.  These claims have not been raised prior to this point and will not be considered here.

Summary judgment is appropriate where there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Miller v. City of Calhoun County*, 408 F.3d 803, 812-13 (6th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). A "genuine issue of material fact" is one which, if proven, could adduce a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden for establishing the absence of a factual dispute rests with the moving party. *Id.* at 249-50.

In deciding whether summary judgment is appropriate, the District Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for a trial." *Sowards v. Loudon County*, 203 F.3d. 426 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000). In so doing, the district court must "draw all reasonable inferences in favor of the non-moving party" in its assessment of the pleadings, affidavits, and other submissions. *Sadie v. City of Cleveland*, 718 F.3d 596, 599 (6th Cir. 2013) (citing *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party is not entitled to trial solely on the basis of the pleadings themselves, but must provide more than conclusory allegations, speculation, and unsubstantiated assertions. *See Lujuan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Rather, at the summary judgment stage, the party opposing summary judgment "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252)

**B. Grounds for decision**

In regard to Plaintiff's ADA claims, defendants Wasden and Ward assert that the ADA does not provide for their individual liability and that those claims must be dismissed. Hickman County argues that Plaintiff has failed to establish a prima facie case demonstrating a violation under the ADA. In the Alternative, Hickman County argues that the accommodation afforded to Plaintiff on account of his disability was reasonable under the ADA.[6] In regard to Plaintiff's § 1983 claims, defendants Wasden and Ward assert the affirmative defense of qualified immunity. Hickman County argues that Plaintiff has failed to establish facts sufficient to show a violation of § 1983.

1. *Plaintiff's ADA Claims*

   **(a) Individual Liability Under the ADA**

   Relying on *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002), defendants Wasden and Ward assert that Title II of the ADA does not provide for individual liability

---

[6] Defendants also assert that municipal liability may not lie here due to the fact that Sheriff Ward and Captain Wasden are not policy-makers for the purposes of ADA. The Magistrate Judge's ultimate recommendation in this matter obviates the need for such analysis, but the Magistrate Judge notes that Defendants have not supplied sufficient information to undertake an analysis of Hickman County's liability.

In order for defendant Hickman to be liable under § 1983 for the actions of defendants Wasden and Ward, the court must find that, under State law, either of them "possess the authority to establish policy with respect to the particular decision upon which the suit is based [rather than simple] discretionary authority." *St. Louis v. Praprotnik*, 485 U.S. 112, 124-27 (1988). Defendants assert that Ward and Wasden do not have final approval authority for establishing policy in the context of the ADA, but, rather, must seek approval from the County Attorney and ultimately from the County Board of Commissioners. Further, Defendants argue that there is a policy in effect to govern ADA issues within the jail; thereby cabining the discretion of defendants Wasden and Ward. However, the policy relied upon by Defendants pertains to the treatment of disabled employees within the County government as a whole. Any case-by-case accommodations necessary to accommodate a specific disability presented by a jail inmate would differ markedly from those applied in the employment context.

It is admitted that there is no formal policy regarding treatment of disabled prisoners within the Hickman County jail and that the authority to determine the appropriate accommodations for disabled prisoners was delegated by Sheriff Ward to the Jail Administrator, defendant Wasden. (Deposition of Jerry Wasden, DE 80-4, p. 124-140.) Thus, any analysis of the policy-making authority of defendants Wasden and Ward would necessitate: 1) an evaluation of the formal legal authority of Sheriff Ward to make policy decisions governing the jail facility; and 2) the established policy and customs within the jail itself. Those facts are simply not in evidence.

(Defendants Br., DE 74, pp. 8-9.), and Plaintiff concedes the issue. (Plaintiff's R., DE 79, p. 5.); *See also Williams v. McLemore*, 247 Fed. Appx. 1, 8 (6th Cir. 2007) (holding "the ADA does not provide for personal liability for defendants sued in their individual capacities."). Thus, the Magistrate Judge finds that defendants Wasden and Ward are entitled to summary judgment on Plaintiff's ADA claims against them individually.

### (b) Plaintiff's *prima facie* Case

The ADA was enacted for "the noble purpose of 'providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008) (quoting 42 U.S.C. § 12101(b)(1)). It is applicable, through the Fourteenth Amendment, to state and local government entities, including prisons and county jail facilities such as here. *Tucker*, 539 F.3d at 529 (applying the ADA to a pre-conviction prisoner's claims against a county jail facility).

The ADA provides that "no qualified individual with a disability ("QID") shall, by way of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity." 42 U.S.C. § 12132. Further, the ADA defines a "QID" as:

> an[y] individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). Two forms of impermissible discrimination have been found within these provisions.

First, the ADA prohibits acts of intentional discrimination by state and local governments aimed at disenfranchising disabled indviduals solely because they are disabled. *See Dillery v.*

*City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) (finding that plaintiff's claims of intentional discrimination were not satisfied by a general refusal of a government entity to provide access ramps to public spaces). Second, failure to accede to a request for reasonable accommodation by a "QID" without which accommodation the QID would be excluded from programs, activities, or benefits to which he is otherwise entitled. *See* 28 C.F.R. § 35.130(b)(7), *Tennessee v. Lane*, 541 U.S. 509 (2004) (holding that Congress' mandate for reasonable accommodation of disabled persons in the ADA is a permissible exercise of authority under § 5 of the Fourteenth Amendment to the U.S. Constitution).

It necessarily follows from these provisions that Plaintiff must demonstrate: "(1) []he has a disability; (2) []he is otherwise qualified; and (3) []he is being excluded from participation in, being denied the benefits of, *or* [that he was] being subjected to discrimination under the program solely because of [his] disability" in order to survive the instant motion for summary judgment.[7] *Tucker*, 539 F.3d at 532 (quoting *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th

---

[7] The defense cites *Dillery* and *Freels v. County of Tipton*, 455 Fed. Appx. 574 (6th Cir. 2011) for the proposition that only intentional discrimination is required for liability here. However, the facts in those cases are distinguishable from the facts presented here. The plaintiffs in *Dillery* and *Freels* both pressed claims of intentional discrimination. Here, Plaintiff only raises a reasonable accommodation claim. It is noted that *Freels* Court affirmed the district court's grant of summary judgment because, by supporting Freels under both arms, the arresting officers had provided a "reasonable accommodation" to Freels' request for a cane. *Freels*, 455 Fed. Appx. at 575. Further, the notion that a plaintiff must prove discrimination with the intent of denying services *solely on the basis of* the individual's disability in an accommodation case is contrary to the intent expressed in the ADA and is incongruous with the reasoning in *Tennessee v. Lane*, 541 U.S. 509 (2004) and relevant Sixth Circuit precedent regarding employment discrimination under the ADA.

Under the rule of the last antecedent, when a list of terms has a modifying phrase included at the end, such as "solely on the basis" in the rule adopted by *Dillery*, that modifying phrase is applicable *only* to the last requirement. While this rule is not absolute, it is bolstered by the reasoning evinced by the United States Supreme Court in *Lane* and the Sixth Circuit's reasoning in *Ability Ctr. Of Greater Toledo v. City of Sandusky*, 385 F.3d 901 (6th Cir. 2004).

In *Lane*, the Court concluded that Title II's mandate for reasonable modifications to allow disabled individuals to access essential services and benefits was permissible under §5 of the Fourteenth Amendment because, although there was no intent to discriminate, exclusion of disabled individuals is tantamount to discrimination. *Id.* at 533-34. Likewise, in *Ability Ctr. of Greater Toledo* the court equated indifference with discrimination requiring accommodation when that indifference effectively excludes disabled persons from benefits and services. *Id.* at 907-08 (citing *Lane*, 509 U.S. at 536-37) (Ginsberg, J., concurring in decision).

Cir. 2005)). Plaintiff claims, and Defendants concede, that he suffers from a multiple sclerosis type ailment that renders him dizzy and unsteady at times, and which is debilitating. (Defendant's Reply to Plaintiff's Response to Summary Judgment ("Defendants' Reply"), DE 81, p. 2.) Further, despite Defendant's arguments, Plaintiff is a "QID" for the purposes here—he is a disabled person and was entitled to participate in any activities or benefit from any services that Hickman offers to all of its guests.[8] Contrary to Plaintiff's claims, however, he was not discriminated against in the context of the ADA.

Plaintiff's complaint falls within the second category of impermissible discrimination listed above—he was denied access to benefits and services offered to all inmates housed in the Hickman County jail because he was denied a reasonable accommodation to his request for a cane. According to Plaintiff, his condition renders him unstable and dizzy at times, and, as such, he is prone to falling. Thus, because Defendants refused his request for a cane, or a reasonable alternative, he was prevented from fully participating in meals and recreational activities. Plaintiff's claims, however, are clearly refuted by the undisputed facts.

As noted *supra* at p. 3, Plaintiff was able to attend meals in the cell block, traverse to and from the recreation area, "limp along" with the other inmates as they played ball, and was able to

---

In the context of employment discrimination, the relevant question for imposition of liability is whether an employee "*either* [was] denied a reasonable accommodation for his disability *or* was subject to an adverse employment decision that was made solely because of [his] disability." *McPherson v. Michigan High Sch. Ath. Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997) (*sitting en banc*) (emphasis in the original).

It follows from this reasoning that the intent behind the denial of a reasonable accommodation is immaterial in the analysis as long as the individual requesting accommodation is disabled under the ADA and will be excluded from benefits and services to which he is entitled without reasonable accommodation.

[8] Hickman argues that Plaintiff's failure to demonstrate that he was excluded from the "programs and activities provided by Hickman County to other jail inmates" renders him unqualified under the provisions of 42 U.S.C. § 12131(2). However, the plain language of the statute makes clear that the reference to eligibility requirements pertains to "the receipt of services or the participation in programs or activities provided by a public entity." *Id.* Plaintiff only need establish that he was 1) disabled, and 2) eligible to participate in any services or benefits offered by Hickman to its inmates to fall within ADA's ambit. Because Plaintiff was disabled and a guest of Defendants, he was a QID within the meaning of the ADA—he was entitled to partake of any benefits, services, and programs afforded to all other Hickman County inmates.

traverse back and forth to the jail's library to secure reading materials. (Wassner, DE 73-1, pp. 77-8, 166-67.) It is clear that, while Plaintiff's disability may have prevented him attaining equal participation, Plaintiff was not denied access to the benefits and services offered by Defendants to other inmates. *See Jones v. City of Monroe*, 341 F.3d 474, 479 (6 th Cir. 2003) (noting that "equal results from the provision of the benefit, even assuming equal results could be achieved, are not guaranteed" under the ADA). Moreover, it is abundantly clear that Plaintiff did participate in those programs and services. Thus, Plaintiff cannot show a violation of the ADA.

Further, Plaintiff was provided a reasonable accommodation for his disability.

**(c) Reasonable Accommodation**

In addition to a prohibition on discrimination, the ADA also includes remedial measures aimed at ensuring the full integration, or as full as possible, of disabled persons into society. *See* 28 C.F.R. § 35.130. As Plaintiff notes, the regulations promulgated to implement the ADA mandate modification of existing facilities, procedures, policies, and programs to accommodate disabled persons. *Id.* However, these modifications are required *only* where the accommodation requested is reasonable. *Id.* at § 35.130(b)(7). Reasonableness is defined from the perspective of the grantee or public entity. "[A]n accommodation is reasonable *unless* it requires 'a fundamental alteration in the nature of a program' or imposes 'undue financial and administrative burdens'" on the governmental entity. *Smith & Lee Assoc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996) (emphasis supplied) (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 410 (1979)).

Here, Plaintiff indicated to his arresting officer and the intake/booking officer that he suffered from multiple sclerosis and relied on a cane to provide support. (Messner, DE 73-1, pp. 59, 161.) However, as noted *supra* at p. 2, at the time of his arrest Plaintiff walked to the

arresting officer's car without his cane or other support and professed that he was capable of walking without additional support on the medical questionnaire completed at booking.[9] (Messner, DE 73-1, p. 70, 159.) Further, Plaintiff was never prescribed a cane and only relied on one "sporadically" when he was actually dizzy or feared becoming so. (Messner, DE 73-1, pp. 60, 153, 241.) Plaintiff's request for a cane while incarcerated, however, was unreasonable and Defendants properly refused Plaintiff's request on the basis that a cane is a potential weapon. (Messner, DE 73-1, p. 161.)

It is unquestionable that introducing a cane into the jail facility would "fundamentally alter the nature of" any benefits and services offered to all inmates. Introduction of a potential weapon into an environment populated by "persons with demonstrated proclivities for antisocial criminal, and often violent, conduct," *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)), would constitute "an unjustifiably high risk of harm" to not only jail personnel, but also to every inmate attempting to engage in the services and activities conducted within the jail. *Farmer*, 511 U.S. at 836. Further, to do so would impose an enormous administrative burden upon the jail staff to ensure the safety of Plaintiff, the jail staff, and all other inmates housed there.

Plaintiff was placed in a smaller cell with only two other individuals and the cell was equipped with a low lying cot, a separate toilet facility, and an intercom to facilitate contact with jail officials if Plaintiff experienced a dizzy spell. This accommodation was commensurate with Plaintiff's disability and one which was reasonable under the circumstances. Were Plaintiff to experience one of his infrequent episodes of dizziness, he had restroom facilities at hand, was not at risk of falling off of his bunk, and had a means available to call for help.

---

[9] Plaintiff disputes that he told the booking officer that he could walk on his own. However, Plaintiff admits that he signed the medical questionnaire stating that he could walk on his own. (Messner, DE 73-1, pp. 67-71.)

2. *Plaintiff's Claims under § 1983*

### (a) Violation of the ADA as Cruel and Inhuman Punishment

In order to prove a violation under § 1983, Plaintiff must demonstrate that he was denied "a right secured by the Constitution or laws of the United States[, and (2) that the deprivation] was caused by a person acting under color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2004). As detailed above, Plaintiff has failed to establish his ADA claim. Thus, without a clear violation of federal law, Plaintiff's claims under § 1983 based upon the ADA must be dismissed.

### (b) Plaintiff's Eighth Amendment Claims

It is axiomatic by now that one of the few basic constitutional rights an incarcerated individual retains after conviction is to be provided with medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). This is also true for pre-trial detainees, such as Plaintiff here, who are in the care of a municipal law enforcement facility subsequent to their arrest but prior to an initial appearance before a Judge. *See Adlini v. Johnson*, 609 F.3d 858, 860 (6th Cir. 2010) (holding that the Fourteenth Amendment applies to pre-trial detainees), *Estelle*, 429 U.S. at 101 (noting incorporation of the Eighth Amendment protections against cruel and inhuman punishment to the States through the Fourteenth Amendment).

To prevail on claims that he was denied medical care in violation of the Eighth Amendment, Plaintiff must clear two hurdles consisting of objective and subjective components. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (relying on *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Objectively, Plaintiff must show that he experienced a sufficiently serious medical need—"one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

13

Case 1:11-cv-00059 Document 86 Filed 11/25/13 Page 13 of 16 PageID #: 1131

attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2005)).  Here, it is unquestionable that Plaintiff suffered a serious medical need when he and broke the femur in his right leg.  Thus, objectively, Plaintiff has satisfied his burden.

Subjectively, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical condition.  *Estelle*, 429 U.S. at 104.  Deliberate indifference constitutes more than simple negligence.  *See Comstock*, 273 F.3d at 703 (noting that "deliberate indifference [requires] more than negligence or misdiagnosis of an ailment.").  Defendants must have acted with intent in that they perceived "facts from which to infer" Plaintiff suffered from a serious medical condition, "in fact dr[e]w the inference, and that [they] then disregarded that risk." *Comstock*, 273 F.3d at 703 (relying on *Farmer*, 511 U.S. at 837).  The appropriate question here is not whether Plaintiff was provided *competent* medical care, but, rather, whether Defendants realized that Plaintiff needed medical care and "den[ied] or delay[ed] access to medical care or *intentionally* interefer[ed] with the treatment." *Estelle*, 429 U.S. at 105.  The record reflects that they did not.

As noted *supra* at pp. 3-5, on the morning that Plaintiff fell he was attended by a nurse from the jail initially in the cell bay and subsequently at the jail's clinic.  Upon examination, the nurse found no serious injuries and prescribed ibuprofen for pain and an ice pack for inflammation.  On August 14th and 15th, Plaintiff's testimony indicates that he was seen by the jail's nurse in the cell bay or his cell during her daily rounds.  When Plaintiff was unable to attend roll call on August 16th, the jail's nurse examined Plaintiff in his cell and Plaintiff was then taken to the infirmary with the aid of a walker.  Once in the infirmary, the nurse found no obvious injuries and noted that Plaintiff's pain level was mild.  The nurse consulted with a

physician and Plaintiff was given injections for pain and inflammation. According to Plaintiff, the nurse told defendant Wasden that there were no serious injuries to Plaintiff's right leg and recommended that Plaintiff be returned to his cell.

On August 19th, when Plaintiff could once again not attend roll call, Plaintiff was examined by a nurse practitioner in his cell. The nurse practitioner recommended that Plaintiff have an x-ray of his right leg, and an x-ray was performed that same day. Once it was discovered that Plaintiff's right leg was broken, he was hospitalized without delay and underwent surgery to repair the break with pins. Plaintiff was returned to jail and subsequently underwent physical therapy for his injuries.

It is clear that Plaintiff was provided with medical care. It is also clear that any delay in Plaintiff receiving an x-ray and surgery was not due to the indifference of the jail's staff, but, rather, it was due to the nurse's failure to perceive that Plaintiff had sustained a severe injury. Once the nurse practitioner inferred from Plaintiff's complaints that he may have injured his hip in the fall, Plaintiff was promptly provided with an x-ray, surgery to repair the break, and rehabilitative care. Thus, Plaintiff has failed to establish that Defendants acted with deliberate indifference.

### III. CONCLUSION

The Magistrate Judge finds that defendants Hickman County, Sheriff Ward, and Captain Wasden did not violate the substantive provisions of the ADA when they denied Plaintiff's request for a cane or walking stick during his stay at the Hickman County jail. Further, the Magistrate Judge finds that the accommodations afforded to Plaintiff by Defendants on account of his disability were reasonable under the ADA.

As to Plaintiff's § 1983 claims, the Magistrate Judge finds that the ADA does not provide for the individual liability of defendants Ward and Wasden. Further, the Magistrate Judge finds that Defendants did not act with deliberate indifference to Plaintiff's medical needs after he fell and broke his hip at the Hickman County jail facility.

## IV. RECOMMENDATION

Having found that the Defendants did not violate the substantive provisions of the ADA or abridge Plaintiff's Eighth Amendment rights, the undersigned recommends that the defendants' motion for Summary Judgment be **GRANTED** and Plaintiff's claims be **DISMISSED** with prejudice.

The parties have fourteen (14) days of being served with a copy of this Review and Recommendation to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this Review and Recommendation may constitute a waiver of further appeal. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012) (citing *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986)).

**ENTERED** this 25th day of November, 2013.

/s/Joe B. Brown
Joe B. Brown
Magistrate Judge